**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

OEC GROUP (NY) INC.,

      Plaintiff,

v.

CHINA CARGO AIRLINES LTD.,

      Defendant.

Case No. 22 C 4202

Hon. LaShonda A. Hunt

**<u>MEMORANDUM OPINION AND ORDER</u>**

      Plaintiff OEC Group (NY) Inc. brings this action against Defendant China Cargo Airlines Ltd. for damage to a cargo shipment Defendant carried by air from Shanghai to Chicago. Currently before the Court are the parties' cross-motions for summary judgment, with Defendant arguing that Plaintiff lacks standing, failed to timely submit a claim, and cannot recover freight costs, (Def.'s Mot. Summ. J., Dkt. 33), and Plaintiff seeking to establish recoverable damages, (Pl.'s Mot. Summ. J., Dkt. 36). For the reasons discussed below, Defendant's motion is granted, and Plaintiff's motion is terminated as moot.

**<u>BACKGROUND</u>**

      The following facts are taken from Plaintiff's response to Defendant's statement of material facts, (PRDSOF, Dkt. 46), Defendant's response to Plaintiff's statement of material facts, (DRPSOF, Dkt. 44 ¶¶ 1-32), Plaintiff's statement of additional material facts, (PSOAF, Dkt. 42),[1]

---

[1] Defendant did not file a response to PSOAF under Local Rule 56.1(c)(2), perhaps because the filing was mistitled ("Plaintiff's Local Rule 56.1(a)(2) Statement of Material Facts"). Any confusion, however, should have been resolved by the timing of the filing (filed October 10, 2023, the same date responses were due), the reference on the docket entry to Dkt. 33 (Defendant's motion), and the content of the filing (stating that it is being submitted in response to Defendant's motion), all of which makes it clear that the filing is a statement of additional material facts under Local Rule 56.1(b)(3), not a statement of material facts under Local Rule 56.1(a)(2), despite the title. Accordingly, because Defendant failed to respond to PSOAF, the properly supported assertions of fact made in that document that are not otherwise disputed or objected to are deemed admitted under Local Rule 56.1(e)(3).

and Plaintiff's response to Defendant's statement of additional material facts, (PRDSOAF, Dkt. 49). Although the parties dispute many of the details, they seem to agree about the general narrative and timeline of events that gave rise to this action. Unless otherwise noted, there is no genuine dispute as to the facts discussed below.[2]

In April 2022, IDX Dayton LLC hired Plaintiff[3] to arrange for the shipment of 16 packages (2,609 individual pieces) of tempered glass weighing 7,158 kilograms (the "Cargo") from China to the Unites States. (*See* DRPSOF ¶¶ 3, 6). In turn, Plaintiff contracted with Defendant to transport the Cargo by air from Shanghai to Chicago and provide ground and cargo handling services at the airports. (*See id.* ¶¶ 4-5, 7, 11). In Chicago, Defendant contracted with Swissport Cargo Services, L.P. to provide ground and cargo handling services. (*Id.* ¶ 11; PRDSOF ¶ 27). Plaintiff contracted with The Expediting Co., Inc. to transport the Cargo by truck from the airport in Chicago to IDX Dayton LLC in Dayton, Ohio. (PRDSOF ¶ 28).

Several documents were executed in connection with the shipment. OEC Freight Worldwide Co., Ltd. issued house airway bill number OEC-201200245 ("HAWB") listing Jiangyin Bojing Glass Co., Ltd. as the shipper, IDX Dayton LLC as the consignee, Orient Express Container Co., Ltd. as the issuing carrier's agent, and Defendant as agent shipper or shipper's agent. (PRDSOF ¶¶ 7-11). Master airwaybill number 112-63651405 ("MAWB") lists Orient Express Container Co., Ltd. as the shipper and OEC Group Chicago as the consignee. (*Id.* ¶¶ 12-18). The MAWB included an agreement that the terms were subject to conditions of contract on

---

[2] To the extent that any response to an asserted fact does not comply with Local Rule 56.1(e), the responding party is deemed to have waived the dispute.

[3] In many instances, the parties dispute whether Plaintiff or another entity falling under the OEC corporate umbrella engaged in the relevant conduct. Based on a review of the filings, it appears that Plaintiff is an assumed name of OEC Freight (NY) Inc. (*See* Klobus Decl. ¶ 6, Dkt. 42-13). For purposes of this ruling, unless the evidence shows that another specific OEC entity took certain action, the Court will refer to Plaintiff to keep things simple.

the reverse side. (*Id.* ¶ 19). Although the parties dispute when the conditions of contract were provided, a copy submitted by Defendant in connection with summary judgment includes provisions governing claims for damage to cargo and references conditions of carriage, which in turn contain additional provisions governing claims for damage to cargo. (*Id.* ¶¶ 22-25).

On April 24, 2022, Defendant received the Cargo in Shanghai, did not identify any damage, and shipped it by air to Chicago. (DRPSOF ¶ 9; PRDSOF ¶ 4). On April 25, 2022, the Cargo arrived in Chicago, where Swissport provided ground and cargo handling services for Defendant. (DRPSOF ¶¶ 10-12; PRDSOF ¶¶ 26-27). A truck driver for The Expediting Co. arrived to pick up the Cargo on April 25, 2022, at 4:55 p.m. (DRPSOF ¶ 13; PRDSOF ¶¶ 28-29). At 7:08 p.m., the driver signed a Swissport "Delivery Notification" form under the statement, "The undersigned acknowledge [sic] the receipt of the above[-]mentioned consignment complete and in good condition." (PRDSOF ¶ 30; Delivery Notification, Dkt. 35-7). At 8:28 p.m., a note by a Swissport driver named "C. Odom" was added to the Delivery Notification, indicating "Freight is bent/broken" and "internal packaging damaged". (PRDSOF ¶ 31; DRPSOF ¶ 14; PRDSOAF ¶ 38). The damage note indicates that a "CargoSpot Report" was filed by a person named "Nakia"; however, no such report has been provided. (Delivery Notification w/Damage Note, Dkt. 35-10). At 8:40 p.m., the driver departed Swissport's facility with the Cargo. (IN & OUT Time Form, Dkt. 35-9).

The driver delivered the Cargo to IDX Dayton LLC on April 26, 2022. (PRDSOF ¶ 33). On two different versions of the delivery receipt, there are notes dated April 26, 2022 bearing the same signature. One note reads: "Damaged Pallets / Damaged Material" and "Broken throughout". (Delivery Receipt, Dkt. 37-6). The other note reads: "Broken glass" and "Damages Skids". (Delivery Receipt, Dkt. 37-5 at 10). On May 23, 2022, 29 days after delivery, Plaintiff sent an

email to Defendant as a "preliminary intent to claim" for damage to the Cargo and informed Defendant that Plaintiff would "continue to investigate and gather additional information and will provide [Defendant] with the formal claim form once complete." (PRDSOF ¶ 40).

On May 24, 2022, Plaintiff and IDX Dayton LLC hired Interglobe Marine Consultants ("IMC") to inspect the damaged Cargo. (DRPSOF ¶ 17). IMC surveyed the Cargo on May 26, 2022, and issued a report dated May 31, 2022, which found that the packaging appeared to be adequate in nature and customary for the type of cargo, and 1,081 of the 2,609 total pieces of tempered glass were damaged. (*Id.* ¶¶ 18-19, 22, 23). The IMC report concluded that "that the mishandling of the crates as evidenced by puncture marks through the sidewalls of the crates and slightly splintered some bottom skid runners suggested that erratic and negligent handling and likely dropping of the crates predicated the damages to the tempered glass as discovered, when the cargo was in the care and custody of air line (carrier)." (IMC Report, Dkt. 37-10 at 3). OEC Freight (NY) Inc. and IDX Dayton LLC executed a settlement agreement regarding the damaged Cargo under which OEC Freight (NY) Inc. paid IDX Dayton LLC $52,061.16 and IDX Dayton LLC granted OEC Freight (NY) Inc. full subrogation rights. (PRDSOF ¶ 16; Settlement Release Agreement, Dkt. 37-12).

On August 10, 2022, Plaintiff commenced this action by filing a three-count complaint, asserting claims for damages under the Montreal Protocol No. 4 (Count I),[4] bailment (Count II), and breach of contract (Count III). (Compl., Dkt. 1). Defendant filed an Answer and Affirmative Defenses, (Ans., Dkt. 7), and the parties completed discovery and filed the summary judgment motions presently before the Court.

---

[4] It is now undisputed that the Montreal Convention, not Montreal Protocol No. 4, governs this action.

4

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether there is a genuine dispute of material fact, the Court must resolve all disputes and draw all reasonable inferences in favor of the non-movant. *Dietchweiler v. Lucas*, 827 F.3d 622, 627 (7th Cir. 2016). The party seeking summary judgment has the burden of establishing the lack of any genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248 (1986). Summary judgment is warranted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252.

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: we construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Tokio Marine Specialty Ins. Co. v. Altom Transp., Inc.*, 618 F. Supp. 3d 791, 795 (N.D. Ill. 2022) (quoting *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017)). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Tokio*, 618 F. Supp. 3d at 795 (quoting *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012)).

5

## <u>DISCUSSION</u>

The Court has jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the Montreal Convention, a treaty of the United States that "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Convention for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention") art. 1.1, S. Treaty Doc. No. 106-45 (May 28, 1999).

In its motion for summary judgment, Defendant argues that Plaintiff lacks standing because other OEC entities (not Plaintiff) were involved in the relevant transactions, Plaintiff's claims are barred as untimely because the Swissport Delivery Notification was not sufficient and Plaintiff's May 23, 2022 email to Defendant was sent more than 14 days after delivery, and Plaintiff is not entitled to freight costs because the contract documents foreclose such relief. For its part, Plaintiff seeks a summary judgment determination that it suffered damage and that it is entitled to recover damages for the loss of the Cargo, plus pro-rated fright costs and inspection fees. Although courts generally address the threshold issue of standing first, the Court will proceed with considering timeliness because that question is dispositive. As explained below, this action is barred because Plaintiff failed to make a timely and sufficient complaint of damage to Defendant.

Article 31 of the Montreal Convention sets forth the rules governing complaints for damage to cargo:

### Article 31 -- Timely Notice of Complaints

1. Receipt by the person entitled to delivery of checked baggage or cargo without complaint is *prima facie* evidence that the same has been delivered in good condition and in accordance with the document of carriage or with the record preserved by the other means referred to in paragraph 2 of Article 3 and paragraph 2 of Article 4.

6

2. In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within seven days from the date of receipt in the case of checked baggage and fourteen days from the date of receipt in the case of cargo. In the case of delay, the complaint must be made at the latest within twenty-one days from the date on which the baggage or cargo have been placed at his or her disposal.

3. Every complaint must be made in writing and given or dispatched within the times aforesaid.

4. If no complaint is made within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on its part.

Montreal Convention art. 31.

When interpreting treaties, courts begin with the text and context in which the words are used and apply general rules of construction to difficult or ambiguous passages. *E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 534 (1991). The Montreal Convention's requirement of formal written notice for damage complaints is strictly construed. *See Watkins Syndicate at Lloyd's of London v. Tampa Airlines, S.A.*, No. 03 C 5937, 2004 WL 2290501, at *3 (S.D.N.Y. Oct. 8, 2004) (discussing Article 26 of the Warsaw Convention, the Montreal Convention's predecessor)[5] (citing *Denby v. Seaboard World Airlines*, 575 F. Supp. 1134, 1144 (E.D.N.Y. 1983) (stating that the "requirement is strictly construed and has been upheld repeatedly by the federal courts"), *rev'd on other grounds*, 737 F.2d 172 (2d Cir. 1984); *Onyeanusi v. Pan Am. World Airways, Inc.*, No. 88-6967, 1990 WL 84774, at *5 (E.D. Pa. June 13, 1990) ("Noncompliance with the written notice requirement produces a harsh result.")); *see, e.g., Oriental Ins. Co. v. Bax Glob., Inc.*, No. 08 C 4936, 2009 WL 229668, at *3 (N.D. Ill. Jan. 28, 2009) (dismissing complaint because subrogation letter neither

---

[5] "Courts have recognized that where, as here, the provisions of the Montreal Convention are substantially similar to the equivalent provisions in the Warsaw Convention, the case law interpreting a particular provision of the Warsaw Convention applies with equal force to the Montreal Convention." *Yoly Farmers Corp. v. Delta Air Lines, Inc.*, No. 15 C 2774, 2015 WL 4546744, at *3 (E.D.N.Y. July 28, 2015).

was sent by person entitled to delivery nor contained sufficient information about the damage claimed). Other conditions on bringing an action contained within the Montreal Convention have been strictly construed as well. *See, e.g., Narayanan v. Brit. Airways*, 747 F.3d 1125, 1128 (9th Cir. 2014) (concluding that the plain language of a provision governing the timeliness of claims for death or bodily injury left "no room for flexibility as to the commencement of the limitations period"). Thus, courts applying Article 31 have concluded that, "[a]s the text of the treaty makes clear, '[f]ailure to file a timely written notification of a claim acts as a complete bar to recovery.'" *Yoly*, 2015 WL 4546744, at *3 (quoting *Lokken v. Fed. Exp. Corp.,* No. 99 C 585, 2000 WL 193121, at *5 (S.D.N.Y. Feb. 16, 2000)).

Even where a defendant had actual or constructive notice of a claim, Article 31 bars recovery if a plaintiff failed to timely comply with the written notice requirement. *See Oriental*, 2009 WL 229668, at *3 (declining to follow earlier case that held actual notice to be sufficient because that would effectively obviate the written notice requirement); *Onyeanusi v. Pan Am*, 952 F.2d 788, 794 (3d Cir. 1992) (holding that written notice is required even if carrier has actual or constructive knowledge) (citing *Stud v. Trans Int'l Airlines*, 727 F.2d 880, 883 (9th Cir. 1984) ("If written notice of a consignee's complaint is necessary to preserve the right of recovery, a carrier's actual knowledge of the loss, gleaned from a source other than a written notice of complaint, is necessarily insufficient.")); *Ewig Int'l Marine Corp. v. Am. Airlines, Inc.*, 914 F. Supp. 1543, 1551 (N.D. Ill. 1995) (same) (citing *Onyeanusi*, 952 F.2d at 794); *Moses v. Air Afrique*, No. 99 C 541, 2000 WL 306853, at *7 (E.D.N.Y. Mar. 21, 2000) ("actual notice of the damage may not substitute for formal written notice.") (citing *Denby*, 575 F. Supp. at 1144); *Yoly*, 2015 WL 4546744, at *6 (oral complaint or carrier's own written record insufficient); *Mas & Sons Jardiniers, Ltd. v. Fla. W. Int'l Airways, Inc.*, 177 So. 3d 305, 307 (Fla. Dist. Ct. App. 2015) ("Timely written notice is

required even if an agent of the carrier is aware of the damage."). Furthermore, for written notice of a claim to be sufficient, it must indicate that the cargo is damaged, general statements about the condition of the cargo or packaging are not enough. *See, e.g., Ewig*, 914 F. Supp. at 1554 (finding a "letter express[ing] only the possibility that the shipment had been damaged, not that it actually had been destroyed" was insufficient); *Yoly*, 2015 WL 4546744, at *6 (finding the note "beans very hot" insufficient); *but cf. UPS Supply Chain Sols., Inc. v. Am. Airlines, Inc.*, 646 F. Supp. 2d 1011, 1014 (N.D. Ill. 2009) ("There is nothing in the text of the Montreal Convention that requires an express and definite statement that the shipper intends to hold the carrier liable.").

Based on these principles, Defendant argues that Plaintiff's claims are barred because Plaintiff failed to provide sufficient and timely notice. Specifically, Defendant contends that the damage note on the Swissport Delivery Notification was insufficient, as it was neither made by the person entitled to delivery nor did the words "Freight is bent/broken" and "internal packaging damaged" necessarily indicate that the Cargo was damaged. As a result, Defendant asserts that the first complaint of damage from Plaintiff to Defendant was the May 23, 2022 email, but it was untimely, as it was sent more than 14 days after the Cargo was delivered. In response, Plaintiff challenges Defendant's "strict interpretation of the notice requirement" based on the "fundamental purpose," "overarching aim," and "spirit" of the Montreal Convention. (Pl.'s Resp. at 6-7, Dkt. 43).

"One purpose of requiring written notice is to inform the carrier adequately of the nature of the damages claimed." *Highlands Ins. Co. v. Trinidad & Tobago (BWIA Int'l) Airways Corp.*, 739 F.2d 536, 540 (11th Cir. 1984) (concluding that, "[a]s a matter of law [the note] 'lift inoperative' does not provide adequate written notice that the goods were damaged."). Put another way, "[t]he purpose of Article 31 is to place the carrier on notice that it may be held liable for

reimbursement and to provide it with an opportunity to investigate claims." *Zurich Am. Ins. Co. v. Lan Cargo S.A.*, No. 12 C 9227, 2013 WL 7963678, at *2 (S.D.N.Y. Dec. 9, 2013). Thus, courts have observed that "[t]he Convention's notice requirement 'is not intended to burden the claiming party with onerous hyper-technical hurdles in order to make a claim for damages.'" *Id.* (quoting *Watkins*, 2004 WL 2290501, at *3). At the same time, "[o]ne reason for the written notice requirement is to avoid endless speculation about who knew what and when they allegedly knew it." *Stud*, 727 F.2d at 883-884.

Having considered the text of Article 31, relevant case law, facts, and arguments, the Court concludes that Plaintiff's action is barred. The plain language of Article 31 places an affirmative duty on "the person entitled to delivery [to] complain [in writing] to the carrier . . . at the latest, within . . . fourteen days from the date of receipt . . . of cargo." Montreal Convention art. 31.2-3. An action cannot be asserted against the carrier if the written notice requirement is not timely satisfied. *Id.* art. 31.4. Here, the damage note on the Swissport Delivery Notification is insufficient for a number of reasons. First, the note indicates that it was made by an agent of Swissport, which was acting as an agent for Defendant, not Plaintiff, The Expediting Co., or IDX Dayton LLC. Plaintiff disputes whether The Expedited Co. driver wrote anything on the damage note because it is located adjacent to his signature, but Plaintiff has not come forward with any evidence from which a reasonable jury could infer The Expedited Co. driver wrote anything on the damage note, let alone that he was aware of it. In fact, there are two different versions of the Delivery Notification, one with the damage note and one without, and Plaintiff has not demonstrated that The Expedited Co. driver received a copy of the Delivery Notification with the damage note. Article 31.2 places the duty on Plaintiff to complain of damage—a note by an agent of Defendant does not suffice. Second, as the cases above demonstrate, actual or constructive notice or a

defendant's own written record are not enough if a written complaint is not made by the plaintiff. *See, e.g., Yoly*, 2015 WL 4546744, at *6. Third, the note "Freight is bent/broken" and "internal packaging damaged" indicates only the *possibility* that the Cargo had been damaged, which is not adequate notice under the case law. *See, e.g., Ewig*, 914 F. Supp. at 1554. Consequently, Plaintiff failed to establish that the damage note on the Swissport Delivery Notification satisfies the written notice requirement of Article 31. Turning to the May 23, 2022 email from Plaintiff notifying Defendant of a possible damages claim, it is undisputed that the email was sent more than 14 days after delivery and is therefore untimely.

None of the cases discussed by Plaintiff on this issue persuade the Court to reach the opposite conclusion. In *Hopper Paper Co. v. Baltimore O.R. Co*., , the Seventh Circuit concluded that the limitations on liability contained within a bill of lading did not shield a company from statutory and common law liability where "it [was] undisputed that defendant and its agents were fully aware and cognizant of the existence of all the facts concerning [a train] wreck and destruction of the carload of paper" and "[i]n such a situation a formal notice by plaintiff to the defendant could not have accomplished anything more." 178 F.2d 179, 182 (7th Cir. 1949). But that case involved interpretation of a Federal statute that required a bill of lading (not the Montreal Convention or its predecessor in place at the time), and it was therefore necessary to "constru[e] the bill of lading 'in a practical way.'" *Id.* (quoting *Georgia, F. & A. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 198 (1916)). It is undisputed that Article 31 of the Montreal Convention governs Plaintiff's action, and the weight of authority applying the treaty holds that the written notice provisions are strictly construed and actual or constructive notice of damage is insufficient. In *Yoly*, although the court found that notes for three of four shipments were sufficient because they were made *by the plaintiff* and explicitly mentioned *damaged goods*—the note on the fourth

11

shipment, stating "beans very hot", was not enough. *Yoly*, 2015 WL 4546744, at *1-2, 4-5. The same logic applies to other similar cases relied on by Plaintiff. *See, e.g., Pesquera Navimar, S.A. v. Ecuatoriana De Aviacion*, 680 F. Supp. 1526, 1527 (S.D. Fla. 1988) (holding that note by plaintiff's agent stating, "415 Boxes sof & wet ... temp + 36 degrees Catalina not responsible for damages or temp." was sufficient); *UPS Supply*, 646 F. Supp. 2d at 1015 (finding timely letter stating the shipment was rejected because the goods had spoiled sufficient).

Accordingly, because timely written notice requirement under Article 31 is a precondition to bringing an action for damage to cargo, Plaintiff's action is barred and Defendant is entitled to judgment as a matter of law. Because this determination is dispositive of all Plaintiff's claims, the Court need not reach the issues of standing or damages.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is terminated as moot. Judgment will be entered in favor of Defendant and against Plaintiff.

**DATED**: December 18, 2024　　　　　　**ENTERED**:

LaShonda A. Hunt

_____
LaShonda A. Hunt
United States District Judge